IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHAEL BLAKES,     )
      Plaintiff,     )
     )
vs.     )
     )  CIVIL NO. 3:11-CV-932-GPM-DGW
LINDA FOUTCH and MD FE FUENTES,     )
     )
      Defendants.     )
     )
     )
     )

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

    This matter is before the Court on the Report and Recommendation of United States Magistrate Judge Donald G. Wilkerson (Doc. 60), recommending the motion for summary judgment for failure to exhaust administrative remedies filed by Defendant Fuentes (Doc. 42) be granted. The Report and Recommendation was entered on April 18, 2013 (Doc. 60). Plaintiff filed his objections to the Report and Recommendation on April 26, 2013 (Doc. 62).

## Background

    In this 42 U.S.C. § 1983 case, Plaintiff Michael Blakes claims that in October of 2010 at the healthcare unit of Menard Correctional Center, Defendants Foutch and Fuentes were deliberately indifferent to his medical needs (Doc. 1). Specifically, Plaintiff claims Defendants denied him post-surgical care for three days while he was in segregation after surgery, and that Defendants were aware Plaintiff was improperly placed in segregation.

The motion for summary judgment before the Court relates only to Defendant Fuentes ("Fuentes"). Defendant Foutch ("Foutch") filed a motion for summary judgment on May 6, 2013, which was denied as untimely.

On January 11, 2013, Fuentes moved for summary judgment on the basis that Plaintiff had failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a) (Doc. 42). Plaintiff filed a response to the motion on February 13, 2013. Fuentes replied to Plaintiff's response on February 21 (Doc. 55), to which Plaintiff replied on February 25 (Doc. 56). As required by *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), Magistrate Judge Wilkerson held an evidentiary hearing on Fuentes's summary judgment motion on May 9, 2013 (Doc. 68). Following the *Pavey* hearing, the Magistrate Judge issued the Report and Recommendation currently before this Court (Doc. 60). The Report and Recommendation accurately states the nature of the evidence presented on the issue of exhaustion, including the testimony heard during the *Pavey* hearing, as well as the applicable law and the requirements of the administrative process. This Order addresses only the conclusions of law to which Plaintiff has lodged a specific objection.

## Evidence

Fuentes's motion for summary judgment points to several grievances filed by Plaintiff (Doc 60, p. 4-9). However, only two grievances are really at issue here: 1) a grievance filed on October 11, 2010 and 2) a grievance Plaintiff allegedly wrote with his mouth while in segregation.

The first grievance was filed by Plaintiff on October 11, 2010 against *Foutch* about treatment for his right foot (Doc. 52, Exhibit C). Plaintiff alleged in the grievance that Foutch

was deliberately indifferent to his medical needs (see Doc. 52, Exhibit C). The Administrative Review Board ("ARB") received this grievance on October 14, 2010 (Doc. 52, Exhibit C).

Plaintiff's second grievance alleged he was improperly placed in segregation from October 14, 2010 until October 26, 2010, after undergoing surgery on his thumbs for an injury he sustained through an altercation with his cellmate (Doc. 68, p. 10-11). Plaintiff attempted to write a grievance against Fuentes for placing him in segregation on October 15th or 16th (Doc. 68, p. 14). However, Plaintiff's thumbs were not yet healed and he requested assistance from the prison guard (Doc. 63, p. 2). After the prison guard allegedly denied Plaintiff assistance, Plaintiff attempted to write the grievance with a pen in his mouth (Doc. 63, p. 2). Plaintiff alleges he gave the grievance to the prison guard with instructions to deposit the grievance in the grievance box (Doc. 63, p. 2). Plaintiff did not receive a response to his grievance, and later discovered his counselor did not receive the grievance (Doc. 63, p. 2).

At the *Pavey* hearing, defense counsel presented a furlough agreement Plaintiff signed on November 15, 2010 to demonstrate Plaintiff's thumbs were healed within the sixty-day window to file a grievance (Doc. 68, p. 11-15). When asked why he did not submit a timely grievance, Plaintiff explained that his counselor told him he could not submit a grievance once out of segregation (Doc. 68, p. 16). At the hearing, Plaintiff noted he did not want to defy his counselor's statements for fear of being punished for insubordination (Doc. 68, p. 16).

## Conclusions of the Report and Recommendation

The Report and Recommendation focused primarily on Plaintiff's grievance filed on October 11, 2010. Judge Wilkerson found the October 11, 2010 grievance did not relate to Fuentes because a grievance against Fuentes could only be filed after Plaintiff was placed in

segregation on October *14*, 2010 (Doc. 60, p. 5). Additionally, Judge Wilkerson noted the October 11th grievance pertained only to Foutch, and concerned Plaintiff's right foot (Doc. 60, p. 6). Neither Foutch nor Plaintiff's foot are at issue.

Finally, Judge Wilkerson found Plaintiff failed to follow proper procedures as required under the Illinois Administrative Code because Plaintiff submitted the grievance directly to the ARB "which circumvents the required process" (Doc. 60, p. 6). As to Plaintiff's mouth-written grievance, Judge Wilkerson found that Plaintiff had failed to provide sufficient evidence to substantiate this claim (Doc. 60, p. 6).

### Plaintiff's Objections

Plaintiff lodges two objections to the Report and Recommendation, both of which pertain to his alleged mouth-written grievance. First, Plaintiff claims he was unable to provide proof of his grievance because the prison guard failed to submit the grievance, and he was unable to make a copy of the grievance. Second, Plaintiff argues he was unable to file another grievance after his thumbs were healed because his counselor told him he could not file a grievance after his time in segregation expired, and he feared punishment for insubordination.

### Discussion

Where timely objections are filed, this Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)B), (C), Fed. R. Civ. P.72(b); SDIL-LR 73(1)(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). The Court "may accept, reject, or modify the magistrate judge's decision." *Harper*, 824 F. Supp. at 788. In making this determination, the Court must look at all of the evidence contained in the record and "give 'fresh

consideration to those issues to which specific objections have been made.'" *Id.*

Plaintiff did not lodge an objection to the Magistrate Judge's findings about the October 11, 2010 grievance. While a *de novo* review is not required here, the Court has considered the evidence adduced at the *Pavey* hearing and fully agrees with the findings, analysis, and conclusions of Magistrate Judge Wilkerson about the October 11, 2010 grievance.

Next, the Court must turn to the Plaintiff's objections to the Report and Recommendation. The Court has no evidence Plaintiff's mouth-written grievance existed, much less whether the administrative remedies of the grievance were exhausted. Plaintiff contends the officer did not submit the grievance as instructed, and he was unable to make a copy of the grievance while in segregation. Even if Plaintiff's claims are true, to proceed with this case Plaintiff is asking the Court to assume the existence of his mouth-written grievance, and to assume such existence could show Plaintiff exhausted *all* administrative remedies. Simply put, Plaintiff asks too much.

The Court agrees with the Report and Recommendation that Plaintiff had opportunity to file another grievance within the sixty-day window, but did not. Although Plaintiff alleges his counselor told him he could not file another grievance, and duplicate grievances were punishable by segregation, there is nothing to corroborate these bald assertions. Moreover, there is no support for such an assertion in the Illinois Administrative Code, which states only that "[r]esponses to duplicate grievances on issues that are currently being grieved may be combined in one response." Ill. Adm. Code tit. 20 § 504.830(d).

Within his objection, Plaintiff references language found in *Dole v. Chandler*, 438 F.3d 804 (7th Cir. 2006), which notes "prison officials may not take unfair advantage of the

exhaustion requirement...and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

However, *Dole* is distinguishable from this case in several ways. First, Dole was unable to file a timely appeal after he discovered his grievance was not received because the sixty-day window had expired. *Id.* at 807-08. Here, Plaintiff discovered his grievance was not received within the sixty-day window, and still failed to re-file his grievance (Doc. 68, p. 15-16).

Second, in *Dole* the Plaintiff had a history of properly filed grievances. *See id.* at 811. Here, Fuentes's exhibits A, B, and C reveal Plaintiff often filed grievances with the ARB directly, instead of following the designated procedures at the facility (*See* Doc. 44, Exhibit A, B, and C). Plaintiff's history of improperly filed grievances casts doubt on his ability to properly file the grievance here.

Lastly, and most importantly, in *Dole*, the plaintiff's grievance was lost, but *neither* party disputed the plaintiff had given his grievance to the prison guard for filing. *See Dole*, 438 F.3d at 807. Here, Fuentes denies the mouth-written grievance ever existed (*see* Doc. 55, p. 1). At *Pavey* hearings the court is permitted to make findings of fact and credibility assessments of witnesses. *See Pavey v. Conley,* 663 F.3d 899, 904 (7th Cir. 2011). Magistrate judges are in the best position to assess a witness's credibility because they have the opportunity "to observe the verbal and nonverbal behavior of the witnesses...[including their] reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements." *Kraushaar v. Flanigan*, 45 F.3d 1040, 1052-53 (7th Cir. 1995). Clearly, Judge Wilkerson assessed the credibility of Plaintiff's statements, and found them lacking.

This Court will not second-guess the credibility assessment of the Magistrate Judge. These fundamental differences illustrate that *Dole* is not analogous this case and thus Plaintiff's reliance on *Dole* is misplaced.

In sum, Plaintiff did not lodge objections to the Magistrate Judge's findings about the October 11, 2010 grievance, but the Court nevertheless agrees with the analysis and findings of the Report and Recommendation on this front. Additionally, there is insufficient evidence of Plaintiff's mouth-written grievance to survive Fuentes's motion for summary judgment.

## Conclusion

The Court finds the factual findings and rationale of the Report and Recommendation sound. The Court therefore **ADOPTS** the Report and Recommendation of Magistrate Judge Wilkerson (Doc. 60) and **GRANTS** Fuentes's motion for summary judgment (Doc. 42). Accordingly, Plaintiff's claims against Defendant Fuentes are **DISMISSED** *without* prejudice.

**IT IS SO ORDERED.**

**DATED**: September 18, 2013

/s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge